J-A16026-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: R.A., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: J.A., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 608 EDA 2022 |

Appeal from the Order Entered January 25, 2022
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s):  CP-51-DP-0000022-2020

| | | |
|---|---|---|
| IN THE INTEREST OF: R.M.A., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: J.A., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 609 EDA 2022 |

Appeal from the Decree Entered January 25, 2022
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s):  CP-51-AP-0000709-2021

BEFORE:   McLAUGHLIN, J., McCAFFERY, J., and PELLEGRINI, J.[*]

MEMORANDUM BY McCAFFERY, J.:                    **FILED AUGUST 10, 2022**

J.A. ("Mother") appeals from the decree and order entered by the Court of Common Pleas of Philadelphia County on January 25, 2022, involuntarily terminating Mother's parental rights to her daughter, R.A., a/k/a R.M.A.

---

[*] Retired Senior Judge assigned to the Superior Court.

("Child"), born in March 2018, and changing Child's permanency goal to adoption.[1] In addition, counsel for Mother ("Counsel"), has filed an application to withdraw and an accompanying brief pursuant to **Anders v. California**, 386 U.S. 738 (1967), and **Commonwealth v. Santiago**, 978 A.2d 349 (Pa. 2009). After review, we grant the application to withdraw, affirm the termination decree, and dismiss the appeal from the goal change order as moot.

We begin by restating the relevant facts and procedural history of this matter.[2] Mother herself was adjudicated dependent following a hearing on September 26, 2016, when she was sixteen years old. **See** Juvenile Ct. Op., 3/14/22, at 1. Mother resided with her maternal grandmother until July 8, 2017, when she was hospitalized for mental health treatment. **See** Petition for Goal Change to Adoption ("Goal Change Petition"), 11/24/21, Exhibit A (Statement of Facts re: R.M.A a/k/a R.A.), at ¶¶ j-k. Mother was discharged

---

[1] The decree entered on January 25, 2022, also terminated the parental rights of Z.G. ("Father"). Father did not file a notice of appeal, and he is not a party to this appeal.

[2] We note the factual dearth contained in the record. The entirety of the termination hearing transcript is 14 pages in length. Mother did not testify or present any witnesses in her defense. Therefore, we have gathered the factual record from the juvenile court opinion, the permanency review orders, the petition for goal change to adoption, and the termination hearing transcript.

on August 23, 2017. However, after discovering that she was pregnant, DHS moved her to a mother/baby group home. *Id.* at ¶ l.

When Child was born, Mother was 17 years old and kept Child in her care while living in the group home until July 17, 2020. On that date, the Philadelphia Department of Human Services ("DHS") received a general protective services ("GPS") report alleging that Mother was not adequately feeding Child and had been selling her welfare benefits to buy drugs. *See* Juvenile Ct. Op. at 1. The report also alleged that Mother tested positive for drugs multiple times and appeared under the influence of drugs. *Id.* That report was determined to be valid. *Id.* at 2. The juvenile court discharged Mother's own personal dependency on October 1, 2018, after she turned 18 years old. *Id*. at 1 n.1.

On November 20, 2019, DHS received a second GPS report alleging that Mother had abandoned Child with her maternal great aunt, M.R. *See* Juvenile Ct. Op. at 2. The report further alleged that Mother was now refusing to retrieve Child from M.R.'s care, that Mother had a history of drug use, had voluntarily "absconded from placement" in the group home, and was currently transient. *Id.* at 2; *see also* Goal Change Petition at ¶ s. The report further stated that K.G., another of Child's maternal great-aunts, wanted to provide kinship care for Child. *See* Juvenile Ct. Op. at 2. That report was also determined to be valid. *Id.* at 2.

DHS filed its petition to adjudicate Child dependent on January 7, 2020. Child was adjudicated dependent after a hearing on February 5, 2020. N.T., 1/25/22, at 4. The court placed Child in kinship care with K.G. and ordered Mother to attend twice-weekly visits supervised by DHS at K.G.'s home. *See* Order of Adjudication and Disposition, 2/5/20, at 2. It further referred Mother for parenting classes, housing and employment services, family school, full drug and alcohol screens, a dual diagnosis assessment, monitoring, and three random drug tests prior to the next court date, which was set for April 28, 2020. *Id.*

Thereafter, Community Umbrella Agency ("CUA") established single case plan objectives ("SCP"), including: (1) attend the Clinical Evaluation Unit ("CEU") and obtain three random drug tests; (2) maintain supervised visitation at the agency; (3) attend the Achieving Reunification Center ("ARC") for parenting and housing; and (4) drug and alcohol treatment. These objectives remained substantially unchanged throughout the case. *See* N.T., 1/25/22, at 4-6.

For the next year-and-one-half, the court conducted regular permanency review hearings at which it maintained Child's commitment and placement, and goal of reunification. At the first permanency review hearing on July 9, 2020, Mother was found to be in full compliance, and the court noted moderate progress toward alleviating the circumstances necessitating placement. *See* Permanency Review Order, 7/9/20, at 1. Mother was

permitted twice weekly supervised visitation with Child by the agency, though the court ordered such visitation to be virtual due to COVID-19. *Id.* at 2.

Then, on November 19, 2020, the court characterized Mother as non-compliant regarding the permanency plan. *See* Permanency Review Order, 11/19/20, at 1. Notably, Mother's whereabouts were unknown. *See id.* Mother's last communication with CUA was in August of 2020. *See id.*

The next permanency review hearing occurred on April 6, 2021. There, Mother participated via telephone and was "re-referred" for the same services. *See* Permanency Review Order, 4/6/21, at 2. The court further ordered Mother's visitation be supervised, "line of sight[,]" by the agency. *Id.*

Mother, however, did not attend the September 15, 2021, permanency review hearing, where the court found she had minimally complied with her SCP. *See* Permanency Review Order, 9/15/21, at 1. According to the DHS caseworker, "Mother had not attended a single visit with the Child since the Child was adjudicated dependent nearly two years prior."[3] Juvenile Ct. Op. at 2; *see also* N.T., 1/25/22, at 5, 10. Despite a court order for her appearance at visits, Mother did not adhere to the court's directive. *Id.*

---

[3] The DHS caseworker testified that Mother had also reached out the day before the termination hearing on January 25, 2022. *See* N.T., 1/25/22, 5, 10.

On November 24, 2021, DHS filed petitions to change Child's permanency goal to adoption and involuntarily terminate Mother's parental rights pursuant to 23 Pa.C.S. § 2511(a)(1), (2), (5), (8), and (b).

On January 25, 2022, the juvenile court held a combined hearing on the petitions. The only witness was the DHS caseworker assigned to the matter, Macy Johnston. Mother did not attend but was represented by Counsel.[4] Moreover, the counsel for DHS indicated that Mother received proper notice of the petitions and hearing date, to which Counsel did not object. *See* N.T., 1/25/22, at 4. Child was nearly four years old at the time, and was represented by Harry Levin, Esquire, as Child's guardian *ad litem* ("GAL") (also referred to as a child advocate).[5] At the conclusion of the proceeding, the

---

[4] During the hearing, Mother was represented by Attorney Lelabari Giwa-Ojur, who is misidentified as "Lela Barigawa" and "Ms. Barigawa" in the notes of testimony. N.T., 1/25/22, at 2-14. Her name and signature correctly appear on her notice of appeal and statement of intent to file an ***Anders*** brief in lieu of a statement of errors complained of on appeal, both dated and filed on February 24, 2022.

[5] Our Supreme Court has instructed this Court to verify *sua sponte* that the court appointed counsel to represent a child pursuant to 23 Pa.C.S. § 2313(a), and if counsel served in a dual role, that the court determined before appointment that there was no conflict between a child's best and legal interests. ***See In re Adoption of K.M.G.***, 240 A.3d 1218 (Pa. 2020). If a child is "too young to be able to express a preference as to the outcome of the proceedings," there is no conflict between a child's legal and best interests, and a child's Subsection 2313(a) right to counsel is satisfied by an attorney-guardian ad litem (GAL) who represents the attorney-GAL's view of the child's best interests. ***See In re T.S.***, 192 A.3d 1080, 1092-93 (Pa. 2018). In this case, because Child was nearly four years old at the time of the subject
*(Footnote Continued Next Page)*

court involuntarily terminated Mother's parental rights on all grounds asserted in the involuntary termination petition. *Id.* at 14. In addition, the court changed Child's permanency goal to adoption. *Id.*

On February 24, 2022, Mother timely filed notices of appeal. Contemporaneous with the notices, Counsel for Mother filed a statement of intent to file an ***Anders*** brief in lieu of filing a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(c)(4). This Court *sua sponte* consolidated Mother's appeals on March 23, 2022. Counsel filed an application to withdraw and ***Anders*** brief in this Court on April 13, 2022.

We begin by reviewing Counsel's application to withdraw and ***Anders*** brief. ***See Commonwealth v. Rojas***, 874 A.2d 638, 639 (Pa. Super. 2005) ("'When faced with a purported ***Anders*** brief, this Court may not review the merits of the underlying issues without first passing on the request to withdraw.'") (citation omitted); ***see also In re V.E.***, 611 A.2d 1267 (Pa. Super. 1992) (extending the ***Anders*** procedure to appeals from involuntary termination decrees). To withdraw pursuant to ***Anders***, counsel must:

> 1) petition the court for leave to withdraw stating that, after making a conscientious examination of the record, counsel has determined that the appeal would be frivolous; 2) furnish a copy of the [***Anders***] brief to the [appellant]; and 3) advise the [appellant] that he or she has the right to retain private counsel or raise additional arguments that the [appellant] deems worthy of the court's attention.

---

proceeding, we conclude that her statutory right to counsel was satisfied by Attorney Levin.

***Commonwealth v. Cartrette***, 83 A.3d 1030, 1032 (Pa. Super. 2013) (*en banc*) (citation omitted).  With respect to the third ***Anders*** requirement, this Court has held counsel must "attach to their petition to withdraw a copy of the letter sent to their client advising him or her of their rights." ***Commonwealth v. Millisock***, 873 A.2d 748, 752 (Pa. Super. 2005).

Additionally, the Pennsylvania Supreme Court has directed that ***Anders*** briefs must:

> (1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

***Santiago***, 978 A.2d at 361.

Here, Counsel has filed an ***Anders*** brief and application to withdraw stating she has conducted a review of the record and determined that Mother's appeal is frivolous.  ***See*** Application to Withdraw as Counsel, 4/13/22, at 2. Attached to her brief is a copy of a letter Counsel sent to Mother.  While Counsel uses the incorrect name in the salutation, the letter is properly addressed to Mother and explains her rights pursuant to ***Millisock***, ***supra***.

Likewise, Counsel has filed an ***Anders*** brief that substantially complies with the requirements set forth in ***Santiago***, ***supra***.  In concluding that the appeal is wholly frivolous, Counsel's ***Anders*** brief presents neither the

controlling law nor an application of the law to the relevant facts. Nevertheless, *Anders* and *Santiago* require substantial, not perfect performance. *Commonwealth v. Wrecks*, 934 A.2d 1287, 1290 (Pa. Super. 2007). As we find the applicable law regarding termination to be straightforward and referenced in part by Counsel's discussion, we conclude that Counsel's brief substantially complies with *Anders* and *Santiago. See Wrecks*, 934 A.2d at 1290 (stating, "While the brief fails to cite the law relevant to the question of timeliness, we find the applicable time limits to be straightforward.").

We next "conduct an independent review of the record to discern if there are any additional non-frivolous issues overlooked by counsel." *Commonwealth v. Flowers*, 113 A.3d 1246, 1250 (Pa. Super. 2015) (footnote omitted). Counsel's *Anders* brief raises the following issues:

1. Did the [juvenile] court commit an error of law and abuse of discretion by involuntarily terminating Mother's parental rights?

2. Did the [juvenile] court commit an error of law and abuse of discretion by changing [Child's] permanency goal from reunification with parent to adoption?

*Anders* Brief at 2.

Our standard of review requires us to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. *In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citation omitted). The court "is free to believe all, part, or none of the evidence presented, and is likewise

free to make all credibility determinations and resolve conflicts in the evidence." *In re M.G.*, 855 A.2d 68, 73–74 (Pa. Super. 2004) (citations omitted). We defer to the court because it often has "first-hand observations of the parties spanning multiple hearings." *In re T.S.M.*, 71 A.3d at 267 (citations and quotation marks omitted). If the record supports the court's findings, we must determine whether the court committed an error of law or abused its discretion. *Flowers*, 113 A.3d at 1250. An abuse of discretion does not occur merely because the record could support a different result. *In re Adoption of L.A.K.*, 265 A.3d 580, 587 (Pa. 2021) (citation omitted). An abuse of discretion will only be found upon "demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will." *Id*. (citation omitted).

Involuntary termination of parental rights is governed by Pennsylvania's Adoption Act. *See* 23 Pa.C.S. § 2101-2938. To involuntarily terminate a parent's rights to their child, the Act requires the court to conduct a bifurcated analysis in which the court focuses on parental conduct pursuant to Section 2511(a) and the needs and welfare of the child pursuant to Section 2511(b). *In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007). If the court finds that the movant has established grounds to terminate parental rights under Section 2511(a), the court must then analyze the evidence under Section 2511(b). *Id.* Section 2511(b) critically focuses on whether the child has a bond with his or her parent, and what effect severing that bond may have on the child.

*Id*. The movant is burdened to show "clear and convincing" grounds for termination under both Sections 2511(a) and (b). *In re C.P.*, 901 A.2d 516, 520 (Pa. Super. 2006).

In this case, the juvenile court terminated Mother's parental rights pursuant to Sections 2511(a)(1), (2), (5), (8), and (b). As we need only agree with the juvenile court as to any one subsection of Section 2511(a), as well as Section 2511(b), we will analyze the termination decree pursuant to Sections 2511(a)(1) and (b). *See In re B.L.W*., 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). Those sections state the following:

> **(a) General Rule**.—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> > (1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.
>
> > \* \* \*
>
> **(b) Other considerations**.--The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(a)(1), (b).

With respect to Section 2511(a)(1), this Court previously explained:

> To satisfy the requirements of [S]ection 2511(a)(1), the moving party must produce clear and convincing evidence of conduct, sustained for at least the six months prior to the filing of the termination petition, which reveals a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties. In addition,
>
> > Section 2511 does not require that the parent demonstrate both a settled purpose of relinquishing parental claim to a child and refusal or failure to perform parental duties. **Accordingly, parental rights may be terminated pursuant to Section 2511(a)(1) if the parent either demonstrates a settled purpose of relinquishing parental claim to a child or fails to perform parental duties.**
>
> > Once the evidence establishes a failure to perform parental duties or a settled purpose of relinquishing parental rights, the court must engage in three lines of inquiry: (1) the parent's explanation for his or her conduct; (2) the post-abandonment contact between parent and child; and (3) consideration of the effect of termination of parental rights on the child pursuant to Section 2511(b).

*In re Z.S.W.*, 946 A.2d 726, 730 (Pa. Super. 2008) (internal citations omitted) (emphasis added). This Court has also instructed: "[I]t is the six months immediately preceding the filing of the petition that is most critical to our analysis. However, the [juvenile] court must consider the whole history of a given case and not mechanically apply the six-month statutory provisions, but instead consider the individual circumstances of each case." *In re D.J.S.*, 737 A.2d 283, 286 (Pa. Super. 1999) (citations omitted). This requires the Court to "examine the individual circumstances of each case and consider all explanations offered by the parent facing termination of his or her parental

rights, to determine if the evidence, in light of the totality of the circumstances, clearly warrants the involuntary termination." ***In re B., N.M.***, 856 A.2d 847, 855 (Pa. Super. 2004) (citation omitted).

Further, we have stated:

[T]o be legally significant, the [post-abandonment] contact must be steady and consistent over a period of time, contribute to the psychological health of the child, and must demonstrate a serious intent on the part of the parent to recultivate a parent-child relationship and must also demonstrate a willingness and capacity to undertake the parental role. The parent wishing to reestablish his parental responsibilities bears the burden of proof on this question.

***In re Z.P.***, 994 A.2d 1108, 1119 (Pa. Super. 2010) (citation omitted).

Regarding the definition of "parental duties," this Court has emphasized the following:

There is no simple or easy definition of parental duties. Parental duty is best understood in relation to the needs of a child. A child needs love, protection, guidance, and support. These needs, physical and emotional, cannot be met by a merely passive interest in the development of the child. Thus, this [C]ourt has held that the parental obligation is a positive duty which requires affirmative performance.

This affirmative duty encompasses more than a financial obligation; it requires continuing interest in the child and a genuine effort to maintain communication and association with the child.

***In re B., N.M.***, 856 A.2d at 855 (internal citations omitted) (emphasis added).

Here, the juvenile court reasoned that terminating Mother's parental rights under Section 2511(a)(1) was valid because Mother "demonstrated a settled purpose of relinquishing parental claim to the Child and failed to

perform parental duties for at least six months immediately preceding the filing of the termination petition[.]" Trial Ct. Op. at 5. The GPS report that first brought Child to DHS's attention stated Child was underfed because Mother had been selling her welfare benefits to buy drugs. *See* Goal Change Petition at ¶ o; *see also* Trial Ct. Op. at 1. Mother then abandoned Child with her great-aunt and never visited Child in person since Child was removed from her care. *See* N.T., 1/25/22, at 5-6; *see also* Trial Ct. Op. at 2. The record only shows Mother to have ever scheduled a single visit with Child, and she failed to attend without providing any explanation. *See* N.T., 1/25/22, at 10.

Mother knew of her own parenting objectives and did not attempt to progress in them. N.T., 1/25/22, at 2, 5-6. Mother has been made aware of her objectives at multiple times throughout the life of the case. *Id.* at 12. The DHS caseworker testified that Mother would often not respond to the agency's contact efforts. *Id.* at 5-6. Mother failed to complete parenting classes, seek or receive behavioral health consultation, and did not obtain housing support, despite court referrals. *Id.* Mother never submitted herself for court-ordered drug testing since Child was born. *Id.* Even if Mother had complied with her plan objectives, her progress could not be verified because she did not respond to DHS efforts to have her sign documentary releases. *Id.* at 5.

At this juncture, we note that Counsel raises the issue of whether DHS failed to provide reasonable efforts to reunify Mother with Child. Specifically,

Counsel states, "the record arguably does not support a finding that . . . necessary services were provided" insofar as (1) the CUA caseworker communicated with Mother one time in the three months prior to the subject proceeding; (2) following the COVID-19 pandemic, Mother was permitted in-person supervised visitation starting on April 6, 2021; and (3) "in the first critical months of" Child's case, parenting classes were not available due to the COVID-19 pandemic. *Anders* Brief at 9-10.

Nevertheless, Counsel concludes that this claim is arguably without support because Mother did not maintain contact with her CUA caseworker, she did not take advantage of the services offered after the pandemic restrictions lifted, and she did not visit Child even though Child was in kinship care placement. *Anders* Brief at 10. Finally, Mother did not appear at the subject proceeding or present any evidence on her own behalf. Our review of the record confirms these facts.

The Pennsylvania Supreme Court has held that neither Section 2511(a) nor (b):

> requires a court to consider the reasonable efforts provided to a parent prior to termination of parental rights. Nevertheless, th[e] Court has observed that the provision or absence of reasonable efforts may be relevant to a court's consideration of both the grounds for termination and the best interests of the child.

*In re D.C.D.*, 105 A.3d 662, 672 (Pa. 2014) (citation omitted).

Thus, because the evidence establishes Mother failed to perform parental duties or maintain a relationship with Child in the two years since

abandoning her, we conclude the juvenile court did not abuse its discretion in terminating Mother's parental rights pursuant to Section 2511(a)(1). ***See B., N.M.***, 856 A.2d at 855 (explaining that a parent "must exercise reasonable firmness in resisting the obstacles" which limit his or her ability to maintain a parent/child relationship). As we discern no abuse of discretion, we do not disturb the court's findings.

We next review whether termination was proper under Section 2511(b). As to Section 2511(b), our Supreme Court has stated as follows:

> [I]f the grounds for termination under subsection (a) are met, a court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S. § 2511(b). The emotional needs and welfare of the child have been properly interpreted to include "[i]ntangibles such as love, comfort, security, and stability." ***In re K.M.***, 53 A.3d 781, 791 (Pa. Super. 2012). In ***In re E.M.*** [***a/k/a E.W.C. & L.M. a/k/a L.C., Jr.***], [620 A.2d 481, 485 (Pa. 1993)], this Court held that the determination of the child's "needs and welfare" requires consideration of the emotional bonds between the parent and child. The "utmost attention" should be paid to discerning the effect on the child of permanently severing the parental bond. ***In re K.M.***, 53 A.3d at 791. However, . . . [an] evaluation of a child's bonds is not always an easy task.

***In re T.S.M.***, 71 A.3d at 267. "In cases where there is no evidence of any bond between the parent and child, it is reasonable to infer that no bond exists. The extent of any bond analysis, therefore, necessarily depends on the circumstances of the particular case." ***In re K.Z.S.***, 946 A.2d 753, 762-63 (Pa. Super. 2008) (citation omitted).

When evaluating a parental bond, "the court is not required to use expert testimony. Social workers and caseworkers can offer evaluations as

well. Additionally, Section 2511(b) does not require a formal bonding evaluation." *In re Z.P.*, 994 A.2d at 1121 (citations omitted).

Moreover,

[w]hile a parent's emotional bond with his or her child is a major aspect of the subsection 2511(b) best-interest analysis, it is nonetheless only one of many factors to be considered by the court when determining what is in the best interest of the child.

[I]n addition to a bond examination, the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent. . . .

*In re Adoption of C.D.R.*, 111 A.3d 1212, 1219 (Pa. Super. 2015) (quotation marks and citations omitted).

Here, Child has lived in the same kinship care placement for two years and has formed a loving, safe, stable, and supportive parent-child bond with her kinship mother. *See* N.T., 1/25/22, at 6-7. The DHS caseworker who has handled the case for the past two years testified that Mother does not provide for any of Child's general, medical, or emotional needs, and severing Mother's parental rights would cause Child no irreparable harm. *See id.* at 8-9. Mother's counsel did not proffer any evidence to the contrary. Comparatively, the testimony showed that Child's kinship family provides for all her general, medical, and emotional needs. *See id.* at 7. As such, the record supports the termination of Mother's parental rights pursuant to Section 2511(b).

Accordingly, based on our review of the record, Counsel did not overlook any non-frivolous issues. We conclude that the juvenile court properly

terminated Mother's parental rights under Sections 2511(a)(1) and (b), and Mother is not entitled to relief. Therefore, we grant Counsel's application to withdraw and affirm the decree terminating Mother's parental rights.

Finally, we decline to review Mother's appeal to the order changing Child's permanency goal in light of our disposition on the appeal from the termination decree. By affirming the termination decree, Mother's appeal from the goal change order is moot. *See In the Interest of D.R.-W.*, 227 A.3d 905, 917 (Pa. Super. 2020) ("An issue before a court is moot if in ruling upon the issue the court cannot enter an order that has any legal force or effect.") (citation omitted).

Application to withdraw granted. Decree affirmed. Appeal from order changing Child's permanency goal dismissed as moot.

Judge Pellegrini joins the Memorandum.

Judge McLaughlin Concurs in the Result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/10/2022